The next case on the calendar for argument is United States v. Sedano-Martinez, No. 183588. Good afternoon, Your Honor. May it please this Court, my name is John Goetz, and I represent Mr. Sedano-Martinez in this matter. And, Your Honors, if I could first address why we suggest that in this particular case there are unique circumstances that would allow this Court in what would otherwise be the very limited restrictions, if you will, with regards to the waiver of his appeal. And then address the, what I would suggest, the procedural unreasonableness specifically with regards to, although there's other issues in the brief which I'm happy to address to the Court, but specifically with the issue of residence. Getting back to the waiver issue, Your Honors, I would submit that when you first look at this case, there's two key issues that happen, one, while the plea was taking place, and second, between the plea and the sentence. If I could work backwards, working with the matter of Townsend, effectively what happens is after Mr. Sedano-Martinez accepted this plea, that this Court had issued the Townsend case, and I would suggest that it dramatically changed the dynamics of his plea. And when you look at the, simply put, I do not believe and I don't think, frankly, the government contested this issue, he was no longer a career offender under the guidelines subsequently. Sotomayor, the plea agreement said that he was waiving the right, he was also waiving the right to challenge the sentence in the event that he later becomes aware of a change in the law, which he believes would justify a decrease in his sentence. That's correct, Your Honor. So? And that's where I get to this Court's position on those very unique and limited circumstances. I would suggest that this was a very unique and limited circumstance that relates to the guidelines. And I would suggest to Your Honor that that is more than just the law. Well, how do I say it? I believe that that goes to a significant sentence disparity under 3553. There's a standing commission that deals with sentences, and they're always issuing. They're tweaking. I grant you this is more than a tweak, but they're always changing the guidelines. And that's true, but I would suggest that this is different because in this particular case, Your Honor, this came from this, the issue came from this Court through Townsend. So it really does, I would suggest, change the due process issues, if you will. Yes, it's true, but given the Guidelines Commission changing the guidelines all the time, it has to be assumed that the background assumptions will change. Yes, Your Honor. I understand what you're saying, and that's why we keep getting back to what I'll suggest is the second part, which is this Farrack matter, which the Court was aware of it, and the reason I continue to bring this up, and when I say the Farrack matter, as this Court is aware, it deals with Mr. Cedeno Martinez was in a very unique situation and circumstance wherein two of his convictions. Two of the Massachusetts lab issues, right? Correct. What's the status of those convictions? Is he pursuing an appeal of both of those? Good question, yes, Your Honor. He is. I had an opportunity to speak with State counsel about three weeks ago. It's my understanding that the matter, his, and by way of quick background, Your Honor, they're they did this in waves. The Supreme Court of Massachusetts is kind of doing this in waves, and my understanding is Mr. Cedeno Martinez is in the next wave. They've invalidated 11,000 convictions already based on those lab, falsified lab results, right? That's correct, Your Honor. And so he's in the next upcoming wave? Yes, Your Honor. The spring of 2020 is when I understand, but that, I apologize, I can't give you an exact time. That's just what State counsel provided to me. But there are pending appeals challenging both of those Massachusetts convictions? That's correct, Your Honor. And as indicated in the record, and again, not controverted by the government, it's a reasonable probability that those are going to be vacated. This is not a possibility.  Some cases were vacated. The issue, the reason why they did this in waves was to determine when Ms. Farrak may have been committing these crimes. And so they were able to determine, the State police of Massachusetts were able to determine that Mr. Cedeno Martinez's matters fit into that second wave, which is why they broke it down, not to mention the obvious issues of volume and that point. And I, the reason I also say that is because that's what State counsel said in the brief they provided to me, which I provided in the sentencing memorandum. So we didn't take that lightly. It just seems that the Attorney General's office for the State of Massachusetts is continuing to determine their position on it as well. But the long and the short of it is it's our hope that that issue is resolved by the spring of 2020. But to your point, Your Honor, yes, on paragraph 16 of Mr. Cedeno Martinez's plea agreement, he did waive. We don't, typically we would say. The waiver was up to 327 months, right? Under the then-guideline range, yes. He would have been a career offender. And again, that's why Townsend came into play. And he got 151. Correct. Correct, Your Honor. And when you look at the change in the guidelines for the issue of the career offender, that's why I would suggest the issue, and this gets to the procedural reasonableness issue. The one issue that I would like to address with the Court deals with Mr. Cedeno Martinez is the findings of the Court of the use of a premise. And the reason I say that, Your Honor, is if you look, the record is, I would suggest that the forensic portion of the record is clear, notwithstanding what Mark Jones, Jr. says, the leader of this drug conspiracy says. When you look at what the facts actually show, the residence of Mr. Cedeno Martinez was not used to main – it wasn't used to maintain a location for the drugs. It was – the primary use was for his family. And in fact, no narcotics were ever found in the premise at the time of the – at the time of his arrest or the search. And in fact, it's kind of this strange conversation. The grand jury testimony, I would suggest, shows a strange questioning, direct questioning about did you ever do it in – distribute drugs or provide drugs in the house. And Mr. Jones says yes, but he never says, for example, I saw him take it out somewhere in the house. It's just, if I have these drugs in my pocket, for example, and I do this in a home, I would suggest that the guidelines does not equate that to be an issue involving maintaining that premises for the use of holding. Let me ask you about another aspect that the district court cited, which was the district court, I think, said that your client played an integral part in a drug trafficking organization that between September 2015 and February 2016 was implicated in at least three overdose deaths. Was that objected to in the PSR? We did – well – Or did you – do you acknowledge that as accurate? We acknowledged that there were three deaths, but it was also, I believe, the record was clear that that was not – that Mr. Jones had obtained those narcotics from somebody else, that Mr. Cedeno-Martinez was not – He was part of that drug trafficking organization, though, right? He was working with Mr. Jones. Yes, he did work with Mr. Jones. He would supply Mr. Jones with the heroin. Okay. You have two minutes of rebuttal. We'll hear from Ms. Gregory. Good morning. Yes. May it please the Court, Catherine Gregory representing the United States in this matter. Your Honors, I would like to focus on the appellate waiver in this case. This Court has repeatedly held that appellate waivers are presumptively enforceable and that absent some kind of violation of a fundamental right, and fundamental meaning the sentence was impermissibly based on race or gender or something to that effect, that even meaningful errors should not overcome that presumption. And in this case, the appellant simply hasn't raised any sorts of fundamental violations that we could even discuss here as potentially overcoming that presumption. Instead, I don't believe it was addressed at all in the direct brief, and only in passing in the reply, he raises again the procedural unreasonableness and substantive unreasonableness, which are simply insufficient to overcome that presumption. Turning to the Massachusetts litigation, which the appellant raises as a — I appreciate your addressing that as well as the effect of Townsend. I mean, even though these are subsequent events in the case of the Massachusetts convictions, something hasn't happened yet, potentially, but the career offender enhancement is enormous, and so I would appreciate your views. Absolutely, Your Honor, and I — I think it's woven together with the appellate waiver, and I just would like to point to the appellate waiver's language where it says, notwithstanding the manner in which the court determines the sentence. That's important. That means that no matter how the court gets there, if it's at or below this number, which was 262 to 327 months, then you're waiving your right to appeal. And that language is important because things like this do happen. The guidelines may change. There might be a case which is to the defendant's favor, as Townsend was here. There might be an enhancement in the PSR. These things can change, and that's why it says no matter — essentially, no matter how the court gets there, if it's at or below this anticipated, this contemplated number, you're waiving your right to appeal. And that's what happened here. And I would just like to note, or potentially correct here, everyone knew about the Massachusetts litigation even before the plea. It was part of the negotiations. And you don't have to take my word for it. That's right there in the record with defense counsel and the government noting at the plea, yes, we're aware of this, no, we're not withdrawing the plea. Sotomayor, Townsend came down afterward, though. Townsend did come down afterwards, but again, the appellant at sentencing didn't specifically say, I'm not making a motion to withdraw or vacate my plea. We understand — we're aware that this is an issue. And the government also noted, our government trial counsel noted that had we known about the career offender and the Townsend decision before the plea, we wouldn't have offered the lesser included as part of the plea agreement. And I would just like to circle back. This is why appellate waivers are so important. They benefit both sides. There's the benefit to the defendant who has certainty, who in this case, you know, the government didn't pursue the greater charge because we thought that he was a career offender, and there's a benefit to the government, supposedly, in reduced litigation. And that's why these are so enforceable and should be enforced in this case. So while the Massachusetts was — the Massachusetts litigation was known prior to the plea, and the Townsend came out before — or in between the plea and the sentencing, nobody made — or the appellant didn't make any motions or indications that he wanted to withdraw or vacate his plea. And he still isn't asking to vacate his plea here. So he wants the benefit of the plea agreement, but also wants to go back and now say the sentence is unreasonable for these reasons. So as the plea agreement anticipated, notwithstanding the manner in which the district court got to the number that it did, he waived if it came in below 262 months, and it did. So it should be enforced in this case. And if these appellate waivers are to have any meaning, they must be enforced. So I would just like to turn to the procedural arguments, if I may. As to the premises enhancement, this is a preponderance of the evidence standard. This Court reviews for clear error, as this Court well knows, and there just isn't an indication that the Court's findings were clearly erroneous. There was the cooperator testimony or the co-conspirator testimony of the grand jury. There was also months' worth of wire intercepts and GPS phone location information which corroborated that co-conspirator's statements, and that's detailed in the PSR and was mentioned by the district court at the sentencing. There's also $10,000 seized as drug proceeds from the residence, which supports the premises enhancement. And as to the quantity, this was, as Your Honor noted, a multistate distribution operation. The defendant and the co-conspirators spoke about heroin not in terms of baggies or bundles, but bricks repeatedly. And that all goes to support the district court's findings that those enhancements were supported here. I would just like to note as well that when we're talking about whether the court explained itself sufficiently and whether the sentence is substantively reasonable, the district court went over the many, many options that were available to it and the wide range of possible sentences, starting with what it would have been had the ---- had he gone to trial on the, excuse me, the original charge. And the district court twice calculated what the criminal history category would have been if the Massachusetts convictions were not included. There was voluminous ---- I think the brief was included. There was a lot in the sentencing memorandum from the defendant about those convictions, and the district court was very receptive. Not only that, but this court also presumes that a district court has reviewed arguments that are properly presented to it. And the district court calculated what the range would have been if those Massachusetts convictions weren't included, which I believe would have been 97 to 121 months and twice. So the district court looked at the guidelines range for what was actually before it, those convictions, as I understand it, and I take counsel at his word, that they're still in place. The district court looked at, okay, if these are vacated, what would the range be then? The district court explained the reasons for its sentencing. I'm not going to repeat all of the reasoning that it put in the transcript. Your Honors are capable of reading that. And then it came to its conclusion, which was 151 months. And in a case here where the statutory mandatory minimum was 10 years and the government was asking for a 20-year sentence here, I submit to Your Honors that 151 months certainly isn't shockingly high or otherwise unsupportable as a matter of law. Unless Your Honors have any further questions. Robertson, Okay, thank you. Thank you. Mr. Goetz, you have two minutes. Goetz, Thank you, Your Honor. Very briefly, first with regards to this matter, Farrakh, in no way I intended to make it sound like this was something we were hiding the ball, if you will. We had — in fact, I had mentioned this to Magistrate Feldman shortly after I was assigned on a reassignment in this matter, that we were looking into this issue. So we weren't — and we made the government aware. Quite honestly, we thought that he would be in the first wave, so we were kind of hopeful that we wouldn't have to argue this in front of Your Honors. So with regards to that, we were making the Court aware of it. And to the point of counsel, Mr. Serino-Martinez didn't withdraw his plea because he — and you see this in his — in his statement. He accepted responsibility. He was guilty, and he wanted the Court to know that. And he did not want to say, I'm withdrawing my plea. What he was saying is there's been a change in circumstance. I would submit that means that I should get a lesser sentence. And those are the circumstances that we are bringing forward today and that we did bring forward to Judge Geraci. Unless the Court has any other questions, I thank you very much for your time on this. Okay. Thank you very much. Thank you. Well-reserved decision.